MARTIN, Circuit Judge,
concurring:
Jane Doe II suffered horrifying sexual abuse at the hands of seven of her male classmates in the middle of the school day ‘at her high school, She was sixteen years old at the time, but her intellectual disabilities placed her functioning at the level of a nine year old. In the aftermath of the assault, Ms. Doe’s school told her the attack was a “manifestation” of her own intellectual disability. Under these circumstances, one would think Ms. Doe would have a legal remedy against the School District for the assault, as well as for its response. But this case demonstrates how hard it is to meet the standard for relief under Title IX in cases of student-on-student sexual assault. See Williams v. Bd. of Regents of Univ. Sys. of Ga., 477 F.3d 1282, 1293 (11th Cir. 2007) (describing the four elements “[a] plaintiff seeking recov *799 ery for a violation of Title IX based on student-on-student harassment must prove” and stating that liability is limited to “certain narrow circumstances”); Hill v. Cundiff, 797 F.3d 948, 968 (11th Cir. 2015) (“The standard for student-on-student sexual harassment claims is far more rigorous than a claim for teacher-on-student harassment.”)- The Majority arrives at the correct conclusion that Ms. Doe’s case does not clear the high bar for bringing Title IX student-on-student harassment claims. However, I arrive at the same result as the Majority by a different path, which I will set out here.
Immediately after Ms. Doe was assaulted, the School District responded just as it should have. Within a week of the rape, the District’s own police force had interviewed Ms. Doe several times, using specialists trained in interviewing child victims of sexual assault. It had collected forensic evidence and reviewed surveillance footage. It determined Ms. Doe had been sexually assaulted and placed most of the perpetrators under arrest. But then the School Board and other District officials began to worry about possible legal liability and potential harm to the District’s public image. As a result, the District ordered its own police department to stand down and turned the investigation over to the local police. This decision was made by the District Superintendent, over the opposition of the School District’s Chief of Police, No one says the District made this decision because it was in Ms. Doe’s best interest. Rather, this change in approach came because it was best for the District’s public relations.
Once the District handed over the investigation to the Macon Police Department, it relinquished all responsibility for investigating what happened to Ms. Doe and simply signed on to the results of the Macon Police Department’s investigation. The Macon police conducted an interrogation of Ms. Doe in a manner likely to overpower her. While Ms. Doe was alone with two male police officers and neither of her parents present, she was said to have recanted her statements about the horrible attack she had earlier described. Then, just hours after the Macon police told the District that Ms. Doe had recanted, the District charged her with sexual misconduct. Never mind that this charge was wholly inconsistent with the conclusion of the District’s own investigation. The District suspended Ms. Doe from school and even recommended she be expelled. Also, as part of its disciplinary proceedings against Ms. Doe, the District found that her intellectual disability was partially to blame for the circumstances of her rape.
I part ways with my colleagues because I believe a reasonable jury could see this course of action as a “clearly unreasonable” response to Ms. Doe’s sexual assault. Williams, 477 F.3d at 1295. Certainly if I were a juror, I would be so inclined. I had hoped we were long past the day where victims of sexual assault could find themselves charged with disciplinary violations on account of having been raped. It is true the District eventually dropped the charge against Ms. Doe and decided not to punish her for her “sexual misconduct.” But that was only because the District found that Ms. Doe’s intellectual disability contributed to the assault — a finding which, in its own way, allocates fault to Ms. Doe for what happened to her.
I do not suggest there is anything wrong with school officials turning a campus sexual assault investigation over to an independent law enforcement agency. It may even be a preferable course of action in some circumstances. But at the same time, turning a sexual-assault investigation over to local law enforcement does not necessarily shield school officials from Title IX *800 liability. Cf. id. at 1296. In Ms. Doe’s case, the District diverted the investigation to the Macon police only after the District’s own careful criminal investigation already concluded that Ms. Doe had been forcibly raped. Then once the Macon police said Ms. Doe recanted, the District set out to expel her with no effort to evaluate the police department’s report in light of the evidence that caused the District’s own police to conclude that Ms. Doe was the victim of rape. On this record, a jury could find the District’s actions “clearly unreasonable.” Id. at 1295. Therefore, I believe there is a triable issue of fact about whether the District was “clearly unreasonable” in responding to the sexual assault of Ms. Doe.
But as I’ve said, this case illustrates the difficulty students like Ms. Doe have in prevailing in a Title IX student-on-student harassment suit. Even if she shows that the District was “clearly unreasonable” in its response, this is still not enough. Ms. Doe must also show that the unreasonable response led to “further discrimination” that was “so severe, pervasive, and objectively offensive” that it “denfied] [her] equal access to an education.” Hill, 797 F.3d at 968-73; see also Davis v. Monroe Cty. Bd. of Educ., 526 U.S. 629, 650, 119 S.Ct. 1661, 1675, 143 L.Ed.2d 839 (1999). This record does not reflect that Ms. Doe suffered this type of discrimination. Ms. Doe’s mother made the understandable decision that her daughter would not return to school, and she made this decision even before the District turned the investigation over to the Macon Police Department. Therefore, Ms. Doe cannot show that the school’s unreasonable response to the assault (relying on the Macon Police Department’s conclusion even though it conflicted with the District’s own) was what motivated her mother to withdraw her from school. And too, the District did respond appropriately to Ms. Doe’s educational needs. It immediately provided Ms. Doe with home-based educational services. Then when her mother was ready for her to return to -a classroom setting, the District paid for her to finish high school at a small private school. Further, because the District ultimately decided not to take disciplinary action against Ms. Doe, the earlier disciplinary charge did not adversely affect her educational opportunities. Indeed, Ms. Doe’s mother has acknowledged that the District provided every educational service she wanted for her daughter.
On this record, I agree with the Majority that no reasonable jury could find that the District deprived Ms. Doe of equal access to an education. I therefore concur in the decision to affirm the District Court.